**Stephen FISHER Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

**No. 4:96CV340.**

United States District Court,
E.D. Texas,
Sherman Division.

March 23, 1998.

Marc Peach, Law Office of Marc Peach, Dallas, TX, for Plaintiff.

Allen Butler and M. Brenk Johnson of Clark, West, Keller, Butler & Ellis, L.L.P., Dallas, TX, for Defendant.

*MEMORANDUM OPINION and ORDER*

PAUL N. BROWN, District Judge.

This case involves claims brought by Plaintiff under the Family Medical Leave Act, 29 U.S.C. Section 2601 *et seq.* Pending before the court are Defendant's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment.

### *Introduction*

Plaintiff, Stephen Fisher ("Fisher" or "Plaintiff") is a former employee of State Farm Mutual Automobile Insurance Company ("State Farm"). Fisher began working for State Farm as an Automotive Estimator in 1989. In June of 1994, Fisher's father's health began to deteriorate and Plaintiff began to take time off from work to assist his father with his business and with his health problems. Between June 21 and July 29, 1994, Plaintiff was absent fifteen days in connection with his father's health problems and business affairs. Plaintiff took five days off in August for the same reason. These absences were paid leave. Plaintiff's father passed away on September 9, 1994. During this time, Plaintiff was absent sixteen days.

In a letter dated September 22, 1994, Plaintiff requested another leave of absence. In that letter, Plaintiff stated, "Due to my father's recent death, I am requesting a leave of absence for up to sixty working days with the right to return sooner if my personal conflicts and responsibilities will allow." The letter went on to outline Plaintiff's responsibilities as executor of his father's estate, his mother's mental distress due to his father's death and the difficulties these additional responsibilities were having on his marriage and his mental state. He requested a leave of absence "to straighten these affairs out

and allow me a chance to return and fully concentrate on my job duties."

After receiving this letter, Plaintiff's supervisor, David Wellborn ("Wellborn"), advised Plaintiff that he would need to have a doctor complete the State Farm Family Leave Certification Form to support his request for leave. On September 29, 1994, Plaintiff visited Dr. Steven Overn ("Overn") for this purpose.

After Plaintiff's visit, Overn sent the medical certification form to State Farm. Overn diagnosed Plaintiff with adjustment disorder, however, he left blank the portion of the form which indicated what treatment was necessary for this condition and whether Plaintiff was able to perform work of any kind or able to perform the functions of his position. Because of the failure to provide this information, State Farm's medical director, Dr. Margaret Sowada ("Sowada"), contacted Overn regarding his diagnosis. Overn told Sowada that he had prescribed Zoloft to Plaintiff and scheduled a reevaluation in two weeks.

Based on her conversation with Overn and her knowledge that Zoloft typically takes two weeks to begin working, Sowada recommended that leave be approved for two weeks, pending reevaluation by Overn. State Farm sent Plaintiff notification of the approval of leave for two weeks and informed him that he was to report back to work on October 17, 1994.

According to Plaintiff's deposition testimony, he used these two weeks to engage in activities related to his position as executor of his father's estate, including running his father's business. At the end of the two-week leave, Plaintiff did not return to work nor did he contact State Farm to request additional leave. State Farm classified Plaintiff as absent without leave and terminated his employment on October 19, 1994 on those grounds.

Plaintiff brought suit alleging causes of action under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. Section 2601 *et. seq.* (West Supp.1997), and a cause of action for intentional infliction of emotional distress. Defendant filed a motion for summary judg-ment contending that Plaintiff was not eligible for leave under the FMLA, that Plaintiff does not have standing to assert the alleged technical violations of the FMLA and that its actions were not "extreme and outrageous" as required to support a cause of action for intentional infliction of emotional distress. Plaintiff moved for partial summary judgment on his FMLA claims.

### Summary Judgment Standard

The granting of summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The trial court must resolve all reasonable doubts in favor of the party opposing the motion. *Burditt v. W. Am. Ins. Co.*, 86 F.3d 475, 476 (5th Cir.1996). The party seeking summary judgment carries the burden of demonstrating that there is no actual dispute as to any material fact in the case. This burden, however, does not require the moving party to produce evidence showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party satisfies its burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party has satisfied its burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). If the nonmovant fails to set forth specific facts in support of allegations essential to that party's claim and on which that party will bear the burden of proof, then summary judgment is appropriate. *Celotex*, 106 S.Ct. at 2552–53. Even if the nonmovant brings forth evidence in support of its allegations, summary judgment will be appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## I. THE FMLA CLAIMS

### A. Plaintiff's Eligibility For FMLA Leave

#### (1) The Applicable Law

Under the FMLA, employees are entitled to leave for (1) the birth of a child; (2) the adoption of a child; (3) to care for certain family members who have a serious health condition; or (4) if the employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612. Plaintiff claims that he was entitled to leave under the FMLA because he had a serious health condition.

The Code of Federal Regulations ("C.F.R.") provides guidance on what is a serious health condition. 29 C.F.R. § 825.114 (1997). Under this section, a serious health condition entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves either inpatient care or continuing treatment by a health care provider. Since Plaintiff did not present evidence or argue that he received inpatient care, in order to prevail on his FMLA claim, he must have had a serious health condition that involved continuing treatment by a health care provider.

Section 825.114(a)(2) sets forth the requirements an employee with a serious health condition involving continuing treatment must meet.

(a) For the purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:

. . .

(2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:

(i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

(A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

(B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

The regulations define other ways an employee can qualify for leave under the continuing treatment provision, such as a pregnancy or a chronic serious health condition, but none of these are applicable to Plaintiff's claim.

#### (2) Defendant's Arguments

■ Defendant argues that Plaintiff did not have a serious health condition as required by the FMLA because he did not experience a period of incapacity as required by Section 825.114 and was not unable to perform the functions of his position as set forth in 29 U.S.C. Section 2612. Defendant points to Plaintiff's deposition testimony that, during his two weeks of approved leave, he was active in discharging his duties as executor of his father's estate. Defendant also points to the deposition of Plaintiff's physician, Dr. Overn, in which Dr. Overn stated that Plaintiff could still perform the activities of daily living and that his stress could have been eliminated by finding another person to handle the probate of his father's estate. *Overn Dep.* at 80, 85–86. Because Plaintiff was not incapacitated and did not meet the requirements for having a serious health condition, he is not eligible for FMLA leave. Defendant has met its burden of pointing out that there is an absence of evidence to support Fisher's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

### (3) Plaintiff's Arguments

#### (a) Waiver

■ Plaintiff first argues that by approving the initial two-week leave period, Defendant cannot reconsider whether Plaintiff had a serious health condition. To support this contention, Plaintiff cites the proposition that FMLA protection begins at the request for leave. *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758 (5th Cir.1995). While the caselaw does state that FMLA protection begins at the initial request, Plaintiff has not pointed to any authority for the proposition that FMLA protection is absolute and that an employee's condition cannot be evaluated at the time of the request and then reevaluated at a later date. Under Plaintiff's reasoning, all an employee need do is request FMLA leave and he is then absolutely protected, even if he is actually ineligible for FMLA leave. This was not Congress' intent in enacting the FMLA. 29 U.S.C. §§ 2601, 2611, 2612.

Further, the caselaw does not support Plaintiff's proposition. In *Wolke v. Dreadnought Marine, Incorporated*, the district court found that an employer who had previously approved FMLA leave could not be prohibited from asserting a later discovered legal impediment to the employee's claim. 954 F.Supp. 1133, 1137 (E.D.Va.1997) (stating that it was "the clear intent of Congress to restrict the class of employees eligible for the FMLA"). This Court agrees with both the analysis and result in *Wolke*. Plaintiff's waiver argument fails.

#### (b) Incapacity Is Not A Necessary Element

■ Plaintiff argues that he need not be incapacitated to show that he had a serious health condition required for FMLA leave. He argues that the FMLA's framework does not define incapacity as a necessary element in determining whether an employee has a serious health condition.

Despite a valiant effort, Plaintiff is unable to overcome the statutory language, regula-

tions and caselaw which are clear authority that a period of incapacity is necessary to have a serious health condition making one eligible for FMLA leave.[1] Plaintiff's own brief quotes the applicable regulations including the definition of serious health condition as involving "any period of incapacity." *Plaintiff's Response and Objections to Defendant's Motion for Summary Judgment* at 8.

Plaintiff points to a discussion in the interim final regulations concerning the meaning of the language "the employee is unable to perform the functions of the employee." *Id.* at 12. Plaintiff argues that a comment to the interim final regulations which states that:

"FMLA's legislative history states that this provision does not mean that the employee must be so incapacitated that the employee is unable to work at all, but that it may include necessary absence from work to receive treatment, during which time the employee would be temporarily 'unable' to perform the functions of the position."

59 F.R. 31,799–800 (1993).

Plaintiff argues that the use of the word "include" in the above phrase necessarily infers that receiving treatment is not an exclusive reason for absence from work and a legitimate reason that necessitates fulfillment of other obligations outside the workplace would be a logical inclusion under the concept of a qualifying absence from work. Plaintiff argues that the last phrase of this quote makes it "infinitely clear that the employee's necessary presence at a place other than work makes that employee unable to perform the functions of the position." *Plaintiff's Response* at 12.

Plaintiff's interpretation of this comment would thwart the Congressional intent behind the FMLA. Under his reasoning, an employee could miss work for any reason and then be entitled to FMLA leave. This is contrary to the purpose of the FMLA and the plain language of the statute. 29 U.S.C. §§ 2601(b), 2611, 2612.

---

1. Plaintiff argues that the interim regulations, not the final regulations, apply to his case. This does not change the result. Both versions include the language "period of incapacity." Further, the Fifth Circuit has applied the interim regulations to require incapacity. *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 335 (5th Cir. 1997).

The Fifth Circuit has applied 29 C.F.R. Section 825.114 to require a period of incapacity to establish a serious health condition for a patient receiving continuing treatment from a medical professional. *Murray v. Red Kap Indus.*, 124 F.3d 695, 698 (5th Cir.1997) ("Under the regulation, where an employee alleges that he has a serious health condition involving continuing treatment by a health care provider, he must first demonstrate a period of incapacity (i.e. the inability to work) ...."); *Price*, 119 F.3d at 334 (holding that plaintiff did not meet the FMLA's requirements to show continuing treatment to qualify as having a serious health condition because she did not satisfy the FMLA's requirement of a period of incapacity).

Defendant has pointed to summary judgment evidence that demonstrates that Plaintiff was not incapacitated and thus not qualified for FMLA leave. Plaintiff has failed to show a fact question regarding any incapacity and his argument that incapacity is not required fails. Defendant's motion for summary judgment should be granted on this ground.

### B. The Claims for the Alleged Technical Violations of the Act and its Regulations

■ Plaintiff is asserting a cause of action for Defendant's alleged failure to inform Plaintiff of his other leave options or failure to seek a second opinion of Plaintiff's condition. Plaintiff alleges that these actions interfered with his FMLA rights in violation 29 U.S.C. Section 2615. Plaintiff cites a number of cases that he contends provide a private right of action for violations of the FMLA regulations.

These cases do not support Plaintiff's contentions. First, the cases are distinguishable from the instant case because the plaintiff or plaintiff's family member in question either had, or raised a question of fact regarding, a serious health condition which would afford a right to FMLA leave. *Viereck v. City of Gloucester City*, 961 F.Supp. 703 (D.N.J. 1997); *Vasconcellos v. Cybex Int'l Inc.*, 962

F.Supp. 701, 706 (D.Md.1997); *Rhoads v. F.D.I.C.*, 956 F.Supp. 1239, 1251, 1257 (D.Md. 1997) ("A proper FMLA claim requires an employee to show that she had a right to leave under 29 U.S.C. §§ 2611–2612, and that right was interfered with in violation of 29 U.S.C. § 2615."); *Brannon v. OshKosh B'Gosh, Inc.*, 897 F.Supp. 1028, 1038 (M.D.Tenn.1995).

Second, none of these cases provide a private cause of action specifically for a violation of the FMLA regulations. Instead, the courts considered violations of the FMLA regulations in determining whether the defendant employers had met their obligations under the FMLA. The regulations provided guidance or evidence, however, the violations standing alone did not provide a cause of action.

Third, prior courts addressing this question have not found that the regulations provide an independent cause of action for discrete violations of specific regulations. *See Jessie v. Carter Health Care Ctr., Inc.*, 926 F.Supp. 613 (E.D.Ky.1996).

Finally, Plaintiff quotes 29 C.F.R. Section 825.400 as providing an avenue for his requested relief. This section states "[i]f an employer has violated one or more provisions of FMLA, and **if justified by the facts of a particular case**, an employee may receive one or more of the following ...." (emphasis added). The Court is of the opinion that no recovery is justified by the facts of this particular case. Congress enacted the FMLA to protect employees entitled to reasonable leave for certain medical reasons. 29 U.S.C. § 2601. Plaintiff's alleged condition does not fall under the protection of the FMLA, thus, he should not be able to recover for any alleged technical violations.[2]

### II. THE CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ The Texas Supreme Court has held that there are four elements to the tort of intentional infliction of emotional distress:

---

**2.** At the pre-trial conference, the Court previously ruled on Plaintiff's claim that mitigation of damages in an FMLA case is not required. Because the Plaintiff is not entitled to damages under the FMLA, the Court declines to address the matter further.

1) the defendant acted intentionally or recklessly,

2) the defendant's conduct was extreme and outrageous,

3) the defendant's conduct caused the plaintiff emotional distress, and

4) the emotional distress suffered by the plaintiff was severe.

*Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993). Severity of the emotional distress is an element of the cause of action, not simply a matter of damages. *Benavides v. Moore,* 848 S.W.2d 190, 195 (Tex.App.—Corpus Christi 1992, writ denied). The law will intervene "only when the distress is so severe that no reasonable person could be expected to endure it." *Id.*

■ In support of this claim, Fisher pointed to the alleged violations of the FMLA. He also alleged that, after receiving the letter authorizing the final two weeks leave, he attempted to contact officials at State Farm, but they did not respond to his calls and correspondence.

These claims fall well short of the "extreme and outrageous" level necessary to support a jury verdict for intentional infliction of emotional distress. *Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1144–45 (5th Cir.1991); *Dean v. Ford Motor Credit Co.,* 885 F.2d 300, 307 (5th Cir.1989); *Johnson v. Merrell Dow Pharmaceuticals, Inc.,* 965 F.2d 31, 33 (5th Cir.1992) ("In order to properly manage its business, an employer must be able to supervise, review, criticize, demote, transfer and discipline employees."); *Ugalde v. W.A. McKenzie Asphalt Co.,* 990 F.2d 239, 243 (5th Cir.1993). Instead, Fisher's claims are indicative at most of a "mere employment dispute." *MacArthur v. University of Tex. Health Ctr. at Tyler,* 45 F.3d 890, 898 (5th Cir.1995); *Ugalde,* 990 F.2d at 243 ("[L]iability does not extend to mere insults, indignities, threats, annoyances, or petty oppressions .").

■ Plaintiff made one other allegation in support of his claim for intentional infliction of emotional distress. Plaintiff alleged that Defendant, through Mr. Morsch, placed a memorandum containing false information in Plaintiff's personnel file. If true, this conduct may rise to the level of extreme and outrageous conduct necessary to support his claim. However, the summary judgment evidence Plaintiff cites to support this allegation was not attached to his brief. Since no summary judgment evidence was submitted to support this claim, it also cannot survive summary judgment.

### CONCLUSION

For the above mentioned reasons, Defendant's motion should be granted and Plaintiff's motion should be denied. The Court has considered all other arguments raised by the motions and finds that they lack merit.

IT IS SO ORDERED.